UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WATERS,

    Plaintiff,                                               Civil Action No. 12-13050

v.                                                      HON. GEORGE CARAM STEEH
                                                             U.S. District Judge
                                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas Waters ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on June 24, 2009, alleging disability as of January 28, 2008 (Tr. 99). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on July 19, 2010 in Chicago, Illinois before ALJ Theodore Grippo (Tr. 18). Plaintiff, represented by attorney Donald Shiffman, testified by teleconference (Tr. 21-30). On October 28, 2010, ALJ Grippo found Plaintiff not disabled on or before the March 31, 2009 expiration of his entitlement to DIB (Tr. 43-44). On May 23, 2012, the Appeals Council

denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on July 11, 2012.

## BACKGROUND FACTS

Plaintiff, born October 15, 1951, was 57 on his date last insured ("DLI") of March 31, 2009 (Tr. 99). He obtained a GED and worked previously as a cashier, cook, and shoe repairman (Tr. 123, 127). His application for benefits alleges disability as a result of a knee condition (Tr. 122).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently weighed 215 pounds and stood 5' 8" (Tr. 21). He received a GED (Tr. 21-22). He had been unable to work since January 28, 2008 due to leg and hip pain (Tr. 22-23). Prior to the alleged onset of disability date, he worked at a fast food restaurant as a cook (Tr. 23). He had been diagnosed with degenerative conditions (Tr. 23). He was initially placed on weight restrictions of 12 pounds, but presently was unable to lift even that weight (Tr. 24). He was unable to walk for more than 50 feet, sit for more than 20 minutes, or stand for more than 15 (Tr. 24-25). He currently required a walker due to his unsteady gait (Tr. 25). The dearth of treating records prior to April, 2009 was due to his lack of health insurance (Tr. 25). He had received 16 epidural steroid injections in the last 11 months (Tr. 27). He denied that the injections significantly improved his condition (Tr. 27). Prescribed pain medication made him slightly irritable and less energetic (Tr. 27). He stated that recent x-rays of his left shoulder confirmed the presence of degenerative disease (Tr. 28). He was scheduled for bilateral hip surgery the following month (Tr. 28). He acknowledged that he had been imprisoned earlier on a "manslaughter charge" and was also incarcerated in 2008 for a DUI (Tr. 30).

### B. Medical Evidence

#### 1. Evidence Predating the Date Last Insured of March 31, 2009

In November, 2007, Plaintiff sought medical treatment after injuring himself while lifting "a case of meat" (Tr. 294-296). Plaintiff reported right thigh pain (Tr. 295). He was prescribed pain medication and advised to apply ice and heat to the affected area (Tr. 298). Imaging studies of the pelvis showed bilateral degenerative changes but no fractures (Tr. 299, 301).

#### 2. Evidence Postdating the Date Last Insured

Plaintiff began treatment with Shelia Singleton, M.D. on April 20, 2009 (Tr. 221). He reported sharp leg and foot pain (Tr. 216). Dr. Singleton noted that he walked with a cane (Tr. 214). She prescribed Motrin 800 and Flexeril (Tr. 215). His rheumatoid arthritis factor was deemed normal (Tr. 219). In May, 2009 Plaintiff reported radiating hip pain, clumsiness, fatigue, and leg pain while walking (Tr. 191-192). Dr. Singleton prescribed Vicodin to be taken "as needed" (Tr. 212). Vascular studies and an EMG of the lower extremities were unremarkable (Tr. 210, 202, 229). He reported that he was currently taking Vicodin and Motrin (Tr. 191). The following month, he reported that his leg pain was worsening (Tr. 209). An MRI of the lumbar spine showed "grade I-II spondylolisthesis" at L5-S1 but no herniation (Tr. 227-228).

In October, 2009, Dr. Singleton completed a Physical Residual Functional Capacity Questionnaire, finding that Plaintiff experienced back pain, leg numbness, and fatigue as a result of osteoarthritis and degenerative joint disease (Tr. 237). She stated that Plaintiff's medications caused drowsiness (Tr. 237). She stated that Plaintiff was in constant pain and incapable of even "low stress" jobs (Tr. 238). She opined that Plaintiff was unable to sit, stand, or walk for more than two hours in an eight-hour workday (Tr. 239). She found that

he required position changes every 15 minutes and was incapable of lifting over 10 pounds (Tr. 239). She found that he was unable to stoop, crouch, or climb ladders (Tr. 240). She found that Plaintiff's symptoms would require him to be absent from work more than four days each month (Tr. 240).

The same month, Plaintiff reported that pain created significant functional limitations and sleep disturbances (Tr. 253). Imaging studies of the hips taken the following month showed osteoarthritic changes and avascular necrosis of the hip joints (Tr. 279). In December, 2009, epidural steroid injections were administered without complications (Tr. 246, 249). Plaintiff reported level "1 to 3" pain on a scale of 1 to 10 (Tr. 248, 251). An MRI of the cervical spine showed degenerative disc disease with a "prominent disc herniation" at C3-4 (Tr. 278). In January, 2010, Plaintiff reported good results from a recent epidural steroid injection (Tr. 244). The following month, imaging studies of the hips showed "advanced degenerative arthrosis and narrowing of both hips" (Tr. 262). Bryan Little, M.D. noted Plaintiff's complaints of bilateral hip pain (Tr. 258). Dr. Little observed that Plaintiff appeared healthy and was in no apparent distress (Tr. 258). Based on the recent imaging studies, he recommended bilateral hip replacement (Tr. 258). In March, 2010, Dr. Singleton noted that hip replacement surgery had been postponed due to insurance issues (Tr. 267). The same month, she composed an opinion letter stating that Plaintiff required hip replacement surgery (Tr. 268).

On July 9, 2010, Dr. Singleton composed a letter on behalf of Plaintiff's disability claim, opining that he was unable to work (Tr. 303). She noted that he required bilateral hip replacement, noting that "[t]his disorder has been present for several years" (Tr. 303). She opined that Plaintiff's condition had "progressively worsened" since the November, 2007 imaging studies were performed (Tr. 303).

### C. The ALJ's Decision

ALJ Grippo found that through the DLI of March 31, 2009, Plaintiff experienced the "medically determinable impairments of "arthritis of both hips and degenerative disc disease" (Tr. 38). However, he found that neither condition created impairments "that significantly limited the ability to perform basic work-related activities for 12 consecutive months" (Tr. 38). He found that Plaintiff was not disabled at "Step Two" of the administrative sequence. 20 C.F.R. §416.920(a).

The ALJ found that while Plaintiff sought treatment in November, 2007, he continued working full time up to the alleged disability onset date of January 24, 2008 (Tr. 40). The ALJ noted that the work required him to stand for hours a day, walk for one hour, and lift up to forty pounds frequently (Tr. 40). He also noted that while Plaintiff alleged disability as of January 28, 2008, his inability to continue work was more likely due to the fact that he was arrested and jailed on January 23, 2008 for a DUI (Tr. 41). ALJ Grippo noted that between January, 2008 and March 31, 2009, Plaintiff had not received any medical treatment (Tr. 40). He cited April, 2009 treating records stating that Plaintiff's range of motion was only slightly reduced (Tr. 41). The ALJ noted that while a June, 2009 MRI of the lumbar spine showed degenerative changes, Plaintiff was able to engage in a wide range of activities after this date (Tr. 41). He noted that Plaintiff did not complain of back pain at the time of his November, 2007 treatment (Tr. 42). The ALJ found that Plaintiff's ability to vacuum, prepare simple meals, shop, mow the lawn, and attend church stood at odds with the allegations of limitation (Tr. 41).

### **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Step Two Determination

In his one-page argument for remand, Plaintiff criticizes the Step Two determination that he did not experience any severe impairments on or before March 31, 2009. *Plaintiff's Brief* at 4-6, *Docket #9*. He contends that the ALJ ought to have found that avascular necrosis was an impairment and that this condition, along with bilateral hip arthritis and degenerative disc disease were "severe" impairments at the second step of the administrative sequence. *Id.* at 4. He notes that treating physician Dr. Singleton opined that Plaintiff's limitations existed prior to the expiration of benefits. *Id.* at 5 (citing Tr. 303). Plaintiff points out that November, 2009 imaging studies of the hips showed that the avascular necrosis changes were "'old.'" *Id.* at 4 (Tr. 279).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS,* 773 F.2d 85, 89 (6th Cir.1985). "To determine that a claimant has a severe impairment, the ALJ must find that an impairment or combination of impairments significantly limits the claimant's ability to do basic work activity." *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 243, fn 2 (6th Cir. 2007); 20 C.F.R. § 416.920. An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris*, 773 F.2d at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th

Cir.1984)). A non-severe impairment is one which does not "significantly limit [the] physical or mental ability to do basic work activities." 20 CFR § 416.921(a)

> Section 416.921(b) defines basic work activities as follows:
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

The ALJ did not err in finding only non-severe impairments at Step Two. He observed that Plaintiff had not sought any medical treatment between the alleged onset date of January 28, 2008 and the March 31, 2009 expiration of benefits (Tr. 40). While Plaintiff testified that his lack of health insurance prevented him from seeking treatment, I note that the record does not contain *any* evidence, *i.e.,* emergency room visits to obtain pain medication, *etc.* to support the conclusion that he experienced work-related limitations for this period. In finding the absence of severe impairments, the ALJ also reviewed and discussed the November, 2007 records, noting that imaging studies of the hips showed degenerative changes but were negative for avascular necrosis (Tr. 40). Plaintiff argues that the November, 2009 imaging studies showing "old" avascular necrosis of the femoral heads support the conclusion that his alleged disability predates the expiration of benefits (Tr. 279). However, this alone does not establish that the condition predated the DLI, much less that it created functional limitations prior to March 31, 2009. The ALJ pointed out that November, 2007 records show that Plaintiff sought treatment for a discrete workplace injury rather than a chronic condition and that the injury did not prevent Plaintiff from returning to his job requiring up to 40 pounds lifting (Tr. 40). In support of his credibility determination, the ALJ also noted although Plaintiff alleged disability as of January 28, 2008, he ceased

work on January 24, 2008 after being arrested and incarcerated the previous day for a DUI (Tr. 41).

The ALJ's reasons for rejecting Dr. Singleton's October, 2009, and March and July, 2010 disability opinions are also well supported and articulated. He provided several reasons for declining to apply her findings to the period prior to the DLI, noting (1) She did not begin treating Plaintiff until almost a month after the DLI; (2) Her October, 2009 assessment reflected Plaintiff's current condition rather than the period before the expiration of benefits; (3) The treating physician's July, 2010 opinion that the condition of avascular necrosis had "progressively worsened" did not establish that the condition created limitations prior to March 31, 2009; (4) Her opinion that the condition had "progressively worsened" did not include an assessment of Plaintiff's pre-DLI functional limitations; and (5) the diagnosis of avascular necrosis was not mentioned in her treating notes until October, 2009 (Tr. 42-43). Because the ALJ's finding that the record does not support the presence of severe impairments prior to March 31, 2009, it should remained undisturbed.

In closing I note that Plaintiff's qualification for DIB, based on his prior earnings, was premised on establishing disability before March 31, 2009. The ALJ's determination that Plaintiff was not disabled before the expiration of DIB is well supported. However, the question of whether the evidence establishes disability *after* that date is not before the Court. If Plaintiff believes that his condition has deteriorated since that time and wishes to reapply for benefits, he faces no deadline for obtaining SSI, provided that he can show disability and financial need. *Willis v. Sullivan*, 931 F.2d 390, 392, fn. 1 (6th Cir.1991); 42 U.S.C. § 1382.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 21, 2013

_____
**CERTIFICATE OF SERVICE**

I hereby certify on August 21, 2013, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 21, 2013: **None.**

s/Terri L. Hackman
Judicial Assistant to
Magistrate Judge R. Steven Whalen
(313) 234-5115